**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| STEVEN JACKSON | : |
| Petitioner | : |
| v | :     Civil Action No.: DKC-03-1016 |
| LLOYD WATERS, Warden, et al. | : |
| Respondents | : |

. . . . . o0o . . . . .

**MEMORANDUM**

This Petition for Writ of Habeas Corpus was filed April 4, 2003, pursuant to 28 U.S.C. § 2254. On July 24, 2003, Respondents filed an answer to the petition along with the record of the prior proceedings in the Maryland State courts.[1] *See* Paper No. 7. On August 13, 2003, Petitioner filed a Response to the Answer. *See* Paper No. 10. Upon review of the papers filed, this court finds a hearing in this matter to be unnecessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6; *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not necessarily entitled to a hearing under 28 U.S.C. § 2254(e)(2)).

Petitioner asserts that he was provided with the ineffective assistance of counsel inasmuch as counsel failed to object to the trial judge's method of responding to a note received from the jury during their deliberations and failed to object to the trial judge's jury instruction regarding second degree rape. Paper No. 1. Petitioner contends further that even if each of these errors is not significant alone, the cumulative effect of trial counsel's errors amount to constitutional error.

---

[1] During the pendency of this case, the Fourth Circuit Court of Appeals issued a decision in *Thompson v. Greene*, 427 F.3d 263 (4th Cir. 2005), requiring service of exhibits in a habeas corpus proceeding involving a *pro se* petitioner. Petitioner is represented by counsel in this case. Having received no objection regarding service of the answer without exhibits, this court will not require Respondent to supplement service with exhibits.

**Background**

On May 18, 1999, Petitioner was convicted of two counts of second degree rape after a jury trial in the Circuit Court for Anne Arundel County. Paper No. 7 at Ex. 1. The evidence presented by the State at trial follows. The first witness to testify for the prosecution was the alleged victim, Shannon Sherrock. *Id.* at Ex. 4, pp. 7–115. She testified that she first met the defendant when she was at a nightclub called Club Rumblefish during a special night the club had for people who were under 21 years of age.[2] *Id.* at p. 10. The defendant had ridden his horse to the club and Ms. Sherrock approached him to ask him about his horse. *Id.* at p. 11. Upon talking to the defendant, Ms. Sherrock learned that the defendant owned four other horses; that he had little time to ride them because he owned the gym across the street from the bar; and that he frequently had other people come out to ride the horses for him. *Id.* The two discussed riding horses and Ms. Sherrock provided Mr. Jackson with her phone number so that he could call her to arrange a time when the two of them could go horseback riding. *Id.* at p. 14.

After talking on the phone several times, Mr. Jackson invited Ms. Sherrock to go horseback riding with him on June 24, 1999. *Id.* at p. 17. The two of them met at Marley Station Mall and drove back to the defendant's gym where she changed into riding clothes. *Id.* at pp. 20–21. At the defendant's suggestion, Ms. Sherrock rode with him in his car to the area where he kept his horses. *Id.* at p. 21. She and the defendant rode two of the horses on a trail that led to a bar called Snyder's. *Id.* at p. 27. While at the bar she was served two beers, an alcoholic drink called a lemon drop[3], and a portion of an apple flavored alcoholic drink called a Jolly Rancher. *Id.* at p. 29–30. During her

---

[2] At the time of the offense she was 19 years old.

[3] The lemon drop drink was described as containing vodka, lemon juice and sugar and was referred to as a shooter. *Id.* at p. 30.

testimony, Ms. Sherrock stated that she first went into the bathroom when she got to the bar and upon returning to the bar, the defendant had an opened beer waiting for her. *Id*. While at the bar the defendant revealed to her that he had been arrested on a previous occasion. *Id*. at p. 31. During their stay at the bar, Ms. Sherrock left again to go to the restroom, leaving her drink sitting on the bar. *Id*. at p. 33. She testified that upon leaving the bar she began to feel inebriated even though she did not have enough alcohol to drink to cause her to feel that way. *Id*. at p. 35. She testified that she did not remember riding the horse back to the stables and that the next thing she remembered was being in a dark room, hearing the defendant's voice and being aware that he was on top of her having sex with her. *Id*. According to Ms. Sherrock, she rolled over and tried to stand up and then realized that she was not wearing any clothes. *Id*. When she tried to leave, she found that she could not walk and she began throwing up. *Id*. at p. 36. After falling down, she testified that the defendant came up behind her, picked her up and placed her into his car. *Id*. at pp. 36–37. Although she testified that her memories of the night were not clear, she remembered asking the defendant for her clothes while they were in the car and that she was putting her head out of the window so that she could wake up. *Id*. at p. 37. The next thing Ms. Sherrock said she remembered is being in the gym where the defendant worked and thinking that her clothes were there. *Id*. She then remembers being on her stomach and realizing that the defendant was again having sex with her and, in response, she rolled off of the bed and as she was sliding across the floor, she remembers the defendant laughing at her. *Id*. at pp. 38–39. She then testified that she did not remember getting dressed, but that the defendant was helping her get to her car when he asked her 'have you figured out what I have been arrested for?' *Id*. at p. 43. The only other things Ms. Sherrock recalled while

being inside the gym were that the defendant told her he was going to take pictures of her and that she heard a vibrator. *Id*. at p. 40.

She testified that her drive home was difficult because she started throwing up repeatedly. *Id*. at p. 42. She arrived home at approximately 5:45 a.m. and went to sleep. *Id*. at pp. 43–44. She then testified that she called a friend to tell her how badly she felt and that she suspected that she had been raped the evening before. *Id*. at p. 44. She testified that her body was very sore; that upon going to the bathroom she noticed that there was an oily substance in the toilet; that her vaginal area smelled like lemons; that there were bruises that looked like fingerprints on her thighs and arms; and that her vaginal area was red and irritated. *Id*. at 45. Ms. Sherrock testified that, in spite of how she felt, she went to work the following day and went to her boyfriend's house after she was finished working. *Id*. at p. 46. Upon arriving at the house of her boyfriend, Eric Miller, Ms. Sherrock told him everything that she could remember from the night before. *Id*. at p. 47. After telling her mother that she suspected she had been raped, Ms. Sherrock went to Howard County Hospital and the police were called. *Id*. at pp. 49–50. Upon learning that the alleged rape had occurred in Anne Arundel County, Ms. Sherrock was informed that there was nothing that could be done and no medical exam took place. *Id*. at p. 50. Although Ms. Sherrock was advised, after she had related her memories to several police officers, that she should report to a hospital in Anne Arundel County, she did not go to a hospital in Anne Arundel County. *Id*. It was not until June 27, 1999, that Ms. Sherrock went to the Anne Arundel County police and reported that she had been raped. *Id*. at p. 51. It was on this day that she also found a hard plastic object inside of her vagina which she turned over to the police. *Id*. at pp. 51–52. She also gave the police the clothes she was wearing on the night of the incident. *Id*. at pp. 53–56. Although the State's theory of the case was that Ms.

4

Sherrock had been secretly drugged by Mr. Jackson, there was no physical evidence establishing that fact because Ms. Sherrock did not report the incident to the proper authorities soon enough after the event for blood tests to be performed. *See Id.* at Ex. 5, pp. 89– 90.

The defense in this case was that the sexual contact between Mr. Jackson and Ms. Sherrock was consensual. Mr. Jackson took the stand in his own defense and denied ever administering any type of drug to her. *Id.* at Ex. 5, p. 169. In addition he testified that the horseback ride to and from the bar where the two of them spent the evening involved traveling over a difficult terrain in the dark. *Id.* at pp. 157– 166. The defense also introduced testimony from a friend of the defendant, Laura Blake, who testified that the horse ridden by Ms. Sherrock "spooks easily" and that the terrain is difficult to ride. *Id.* at pp. 136– 137. Mr. Jackson explained that, upon arriving back at the stables, Ms. Sherrock simply removed all of her clothing because she was hot. *Id.* at pp. 176-- 177. Upon doing so, she went into the trailer that was located near the stables where he later joined her and engaged in consensual sexual intercourse. *Id.* at pp. 177– 179. Mr. Jackson claimed that he then drove Ms. Sherrock, who remained nude, back to the gym where they went into his living quarters and again engaged in consensual sex. *Id.* at pp. 181– 186. During their encounter at the gym, Mr. Jackson explained that he provided the victim with a vibrator so she could keep herself "occupied" while he attended to another matter. *Id.* at 187– 188. The bartender who was at the bar while Mr. Jackson was there with Ms. Sherrock also testified that she did not see him put anything into the victim's drink. *Id.* at Ex. 4, p. 133. Another witness testified for the defense that he observed Ms. Sherrock walking into the gym where one of the alleged rapes was determined to have happened, but that Ms. Sherrock did not appear to have any difficulty walking. *Id.* at Ex. 5, pp. 103– 104.

5

The final witness called by the defense was George Jackson, a forensic toxicologist employed at a laboratory that conducted tests on Ms. Sherrock's hair. *Id.* at Ex. 6, p. 15. Dr. Jackson testified that the test conducted were negative for the presence of benzodiazepines, which included Valium, Ativan, Temazepam, Librium, Xanax, and other similar drugs. *Id.* at pp. 22– 23. In addition a test done on a stain on Ms. Sherrock's clothing for the presence of gamma hydroxy butyric acid or GHB, was negative. *Id.* at pp. 24– 25. On cross examination, Dr. Jackson testified that detecting the presence of GHB in the hair of a person who has been exposed to the drug once is extremely unlikely. *Id.* at pp. 30-31. In addition, he testified that GHB is only one of many "knock-out" or "date rape" drugs and that there are numerous drugs which can cause a loss of consciousness. *Id.* at pp. 27– 28.

After the court instructed the jury (*Id* at pp. 42– 52), counsel gave closing arguments and the jury began deliberations. During their deliberations, a juror sent a note to the judge asking, "If I believe that after considering all direct evidence I am unable to determine the lack of consent, am I forced to determine who is 'lying' and determine the above two elements based on who is lying? Or can I remain unable to determine?" *Id.* at p. 115. Counsel for the defense argued that the court should tell the juror that "if you were not able to find, beyond a reasonable doubt, that the victim was . . . helpless . . . then your verdict should be not guilty." *Id.* at p. 116. Counsel argued that the court had an obligation to answer the question, but it did not matter whether the response was made in writing or orally in the courtroom. *Id.* at p. 117. After the prosecutor spoke, counsel objected to further instruction on circumstantial evidence. *Id.* at p. 119. It is unclear from the trial transcript what action the trial judge took in response to the note from the jury, however, during the post-conviction hearing a note from the trial judge to the jury, which was located in the court file, was

6

read for the record. *Id*. at Ex. 15, p. 148. Judge Loney wrote, "[t]he instructions that I previously gave to you about the law are binding upon you. You must apply the law as explained in arriving at your verdict." *Id*. The jury returned a verdict of guilty on two counts of second degree rape. *Id*. at Ex. 6, pp. 121– 22. Counsel testified at the post conviction hearing that he thought the written response by the trial judge was an appropriate and adequate answer to the jury question. *Id*. at Ex. 15, p. 141.

At the post-conviction hearing, Petitioner presented numerous grounds for post conviction relief including ineffective assistance of counsel relating to evidentiary matters; ineffective assistance of counsel relating to witness matters; ineffective assistance of counsel relating to jury instructions; ineffective assistance of counsel relating to closing arguments; ineffective assistance appellate counsel; and cumulative errors amounting to ineffective assistance of counsel. *See Id*. at Ex. 14. Each of these grounds contained numerous sub-issues which were presented by counsel in a 95 page petition. *Id*. A post conviction hearing was held before Judge Heller where post conviction counsel presented testimony as well as affidavits from numerous witnesses regarding whether or not there was a door between the gym and Petitioner's apartment where evidence was seized. *Id*. at Ex. 15 and 16. Judge Heller ultimately denied post conviction relief. *Id*. at Ex. 17.

## **Threshold Considerations**

### **Exhaustion of State Remedies**

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he must have exhausted each claim presented to the federal court by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. 28 U.S.C. § 2254(b) and (c). In

Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals), and with other claims by way of a post-conviction petition, followed by seeking leave to appeal in the Court of Special Appeals.

Petitioner no longer has any state direct appeal or collateral review remedies available to him with respect to the claims raised in this court; thus, his claims are considered exhausted for the purpose of federal habeas corpus review.

## Statute of Limitations

Respondents do not contend -- and the court does not find -- that the petition is time-barred pursuant to 28 U.S.C. §2244(d).

## Standard of Review

Because the Petition was filed after April 24, 1996, it must be evaluated pursuant to amendments to the habeas corpus statutes contained in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (codified in scattered sections of 28 U.S.C.).[4]

Under the AEDPA, federal courts are no longer authorized to correct mere error in state court proceedings, but must instead exercise the more limited review set forth in Section 2254(d). That section now provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

---

[4] *See Brown v. Angelone*, 150 F.3d 370 (4th Cir. 1998).

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2) (as amended). In reviewing Petitioner's attack on his state court conviction, the court presumes that the state court's factual determinations are correct. Petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

> In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor observed that:
>
> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13. The Court noted that "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. With these standards in mind, this court addresses the claims now before it.

**<u>Analysis</u>**

9

The issues presented to this court are whether trial counsel's performance was ineffective when he (1) failed to object to the trial court's failure to re-instruct the jury on the reasonable doubt standard upon receipt of the note from the jury and (2) failed to object to the trial court's jury instruction on second degree rape which combined force and incapacitation of the victim. Paper No. 1. Petitioner also alleges that these errors cumulatively constitute ineffective assistance of counsel. *Id*. Respondents contend that the trial court's response to the jury's question was not in error and required no objection from counsel (Paper No. 7 at pp. 18– 19), and the failure to object to the second degree rape instruction did not prejudice Petitioner (*Id*. at pp. 20– 22).

As the Supreme Court held in *Strickland v. Washington*, *supra*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." *Id*. at 698. Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e) (1)], ... both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel, and this court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding. *See Bell v. Jarvis*, 236 F. 3d 149, 160 (4th Cir. 2000) ("de novo, independent, or plenary review of state court adjudications is no longer appropriate" after passage of AEDPA). *cert. denied by Bell v. Beck*, 534 U.S. 830 (2000).

Petitioner asserts that the post conviction court did not "apply" the *Strickland* test with respect to Petitioner's claim regarding the note from the jury: rather, the court merely outlined the

test and applied an abuse of discretion standard with respect to the trial court's response to the jury note. Paper No. 10 at p. 2. The post conviction court's analysis of the claim was as follows:

> Mr. Jackson alleges that his trial counsel erred in not requesting a proper jury instruction in response to a jury note, that asked,
>
>> If I believe that after considering all direct evidence I am unable to determine the presence or lack of physical helplessness/incapacitation or lack of consent, am I forced to determine who is 'lying' and determine the above two elements based on who is lying? Or can I remain unable to determine?
>
> Mr. Jackson relies on *Ward v. State*, 52 Md. App. 88 (1982), which lays out a three step test to determine the attorney error regarding jury instructions warrants post conviction relief. The three prongs are (1) whether the unrequested instruction correctly sets forth the law and is the appropriate instruction; (2) whether a justifiable reason exists for the counsel's action (or inaction); and (3) whether, based 'upon the facts of the case' defense counsel's incompetent representation contributed to the conviction. The problem with reliance on this test is that *Ward* predates *Strickland* which created a two prong analysis. Maryland courts have clearly held that *Strickland* controls, and that it would have been procedural error to follow the test laid out in *Ward*. Even though Mr. Jackson attempts to fit *Ward* into *Strickland's* test, this Court must follow the laws of the state, not create its own.
>
> Maryland law clearly establishes that the trial judge has sole discretion in deciding whether to provide the jury with supplemental instructions. *Lovell v. State*, 347 Md. 623 (1997). Further, courts have found error when supplemental instructions are confusing or potentially misleading. *Battle v. State*, 287 Md. 675, 685 (1980). Although a trial court has discretionary power, it abuses its discretion in not responding to a jury's request for supplemental instruction when the jury specifies its confusion with central issues in the case. *Lovell*, 347 Md. at 659, *citing Price v. Glosson Motor Lines, Inc.*, 509 F. 2d 1033 (4th Cir. 1975).
>
> In the case *sub judice*, the question from the jury involved issues relating to consent and incapacity. As such, these issues were central to determining whether Mr. Jackson was guilty of rape. Although the transcript of the hearing does not clearly demonstrate a response was

11

> provided to the jury, the court file does contain a copy of the memorandum to the jury instructing them to rely upon the jury instructions provided.
>
> Mr. Jackson's allegation suggests that the judge should have provided supplemental instructions. The record shows that the judge did not provide supplemental instructions, but did in fact respond to the jury's question by instructing them to follow the instructions already given. As the court's have held that the judge has discretion as to whether to provide supplemental instruction, this Court finds no abuse of discretion here.

Paper No. 7 at Ex. 17, pp. 18–20.

When the post conviction court's analysis is reviewed in the context of the overall post conviction ruling and the trial transcript it becomes clear why the court focused on the abuse of discretion issue. At trial, defense counsel argued vehemently in favor of providing the jury with supplemental instructions in response to the jury note. *Id*. at Ex. 6, pp. 115– 119. After the State's Attorney suggested to the court that the jury should be told to rely on the previously given instructions, defense counsel argued, in part, "I think there is an obligation on the part of the Court to answer her question. I don't think it can be evaded. I think it is a fair question. It is a specific question." *Id*. at p. 117. Having made the argument for a response, the only issue left to determine was whether to refer to the instructions already given rather than to supplement the jury instructions, was an abuse of discretion by the trial court. Having already provided the jury with an instruction on determining witness credibility (*Id*. at pp. 49– 50) as well as the burden of proof (*Id*. at pp. 46--47), the trial court elected to refer the jury back to those instructions. In light of the confusion among counsel regarding the precise meaning of the question from the jury and the disagreement about the appropriate response (*see Id*. at pp. 115-- 119), the course of action selected by the trial court was reasonable and did not constitute an abuse of discretion. The pitfalls at issue in

*Bollenbach v. United States*, 326 U.S. 607 (1946),[5] are avoided when the jury is referred back to the instructions as a whole, particularly where, as here, the question raised by the jury is directly addressed by the instructions previously provided. The trial court did not endeavor to place greater weight on one part of the instructions, nor did it attempt to restate the instructions in a manner that may have produced confusion or an unjust result. *See Battle v. State,* 287 Md. 675, 685, 414 A.2d 1266, 1271 (1980) (holding that it is reversible error to give a confusing and potentially misleading instruction in response to an ambiguous question asked by the jury). To suggest that trial counsel's performance was deficient because he did not object when the court, in exercising its discretion, provided the written response referring the jury to the earlier instructions, when counsel had previously argued that the question had to be answered but the court should not further confuse things by instructing on issues not raised by the note, is to engage in hypertechnical hindsight. The law does not require counsel to undertake an exercise in futility. *See Carter v. State*, 73 Md. App. 437, 445 (1988) ("where trial counsel reasonably believes that an argument will not be accepted by the court, trial counsel may, as a tactical move, not make the argument"); *see also Horne v. Peyton*, 356 F.2d 631, 633 (4th Cir. 1966) (fact that counsel could have done more is insufficient for reversal absent any showing of harmful consequences). The post conviction court's analysis is not an unreasonable application of clearly established law governing provision of supplemental jury instructions.

In the context of the overall post conviction opinion, it is clear that Judge Heller understood and applied the correct standard under *Strickland*. For every other assertion of counsel error, and

---

[5] In *Bollenbach* the jury had asked " '[i]f the defendant were aware that bonds which he aided in disposing of were stolen does that knowledge make him guilty on the [conspiracy] count?' " Id. at 609. The trial court's cursory response, which was found to be reversible error, included reference to a presumption that the possessor of recently stolen goods is the thief.

there were many, he ruled either that there was no error or that, if error, the conduct was not prejudicial. In stopping here by finding no abuse of the trial court's discretion, he essentially concluded that there could have been no error in failing to object (particularly when counsel thought the answer was appropriate), and, moreover, no prejudice because the response was appropriate and would have been made even if counsel had objected. Thus, there was no decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Petitioner asserts that the second degree rape instruction provided by the trial court was erroneous because it included reference to the use of force in the commission of a rape and, in this case, there was no "force." Paper No. 1, pp. 13–16. He contends that defense counsel should have objected to the instruction given and his failure to do so constitutes ineffective assistance of counsel. When considering challenges to a jury instruction, this court's role is to view the missing or challenged instruction in the context of the entire trial. "The question . . . is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous or even universally condemned." *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir. 1983), *citing Cupp v. Naughten*, 414 U.S. 141, 147 (1973). In the instant case the instruction regarding second degree rape that was given was as follows:

> Rape is the unlawful vaginal intercourse with a female by force or threat of force and without her consent. In order to convict the Defendant of second degree rape, the State must prove, one, that the Defendant had vaginal intercourse with the victim; two, that the victim was mentally incapacitated or physically helpless and the person performing the act knows or should reasonably know that the other person is mentally incapacitated or physically helpless; and

14

>three, that the act was committed without the consent of the victim. Namely, Shannon Sherrock.
>
>* * *
>
>The amount of force necessary depends upon circumstances. No particular amount of force is required, but it must be sufficient to overcome the resistance of the victim. You must be satisfied that the victim either resisted and that this resistance was overcome by force or threat of force or that the victim was prevented from resisting by force or threat of force.

Paper No. 7 at Ex. 6, pp. 44–45.

The post conviction court found that the instruction given was sufficiently defective to merit an objection by Mr. Jackson's trial counsel. *Id.* at Ex. 17, p. 21. "Given that counsel did not object, the first element of the *Strickland* analysis is shown." *Id.* Having found counsel's performance defective,[6] however, the post conviction court concluded that the failure to object to the instruction did not prejudice Mr. Jackson. *Id.* Although Petitioner here complains that the post conviction court did not explain why the challenged instruction did not prejudice him, Petitioner fails to point out how it caused him harm. The contention that the question sent by the jury during deliberations establishes that the second degree rape instruction confused them is tenuous at best. *See* Paper No. 1, at p. 12. The jury question raised the issue of witness credibility and how conflicting versions of the same events should be resolved. The language regarding force in the second degree rape instruction simply mirrors the statutory definition of second degree rape. By adding the requirement that force must be established, the trial court, as aptly noted by Respondents, "increased the State's burden to show Jackson guilty of second degree rape." Paper No. 7 at p. 23. To the

---

[6]Although the post conviction court found counsel's performance to be defective, arguably the decision not to object to the instruction was within the wide range of acceptable performance by trial counsel. Failure to object to a jury instruction that increases the State's burden of proof may have been sound trial strategy in this case.

extent that jurors may have believed that they were required to decide whether or not the rape involved a use of physical force, the additional burden of proof would have been beneficial to the defense. The state post conviction court's conclusion that Mr. Jackson was not prejudiced by defense counsel's failure to object to the instruction is not an unreasonable application of the *Strickland* standard.

To the extent that instructing the jury about force was in error, it did not so infect the entire trial that the resulting conviction violated due process. The jury's role here was to decide which version of the facts was true. If Ms. Sherrock's testimony was accepted, Mr. Jackson would be found guilty of second degree rape regardless of the theory. In addition to the evidence of incapacitation, there was adequate evidence presented by Ms. Sherrock's testimony for the jury to conclude that the rape involved the use of physical force. *See e. g., Id*. at Ex. 4, p. 35 ("I felt that he was having sex with me. And I rolled over and tried to stand up."); pp. 36–37 ("I was throwing up and he picked me up by my stomach. . . . My feet were off the ground. . . ."); p. 45 ("[The next morning] my arms hurt. My legs hurt, my stomach hurt and my head hurt. My lower back, it was like shooting pain."); and *id*. ("I noticed I had bruises, like fingerprints, on my thighs and on my arms. . . . [My vaginal area] was . . . red, irritated and I guess it was hurt."). Thus, Mr. Jackson can not show a reasonable probability that a different result would have followed had his attorney objected to the challenged instruction.

Finally, Mr. Jackson claims that the cumulative effect of the errors alleged amount to ineffective assistance of counsel. This claim, when raised during the post conviction hearing, involved numerous allegations of error as opposed to the two allegations of error raised *sub judice*. As noted by the post conviction court, however, "'[t]his is . . . a case of the mathematical law that

twenty times nothing is still nothing.'" *Id*. at Ex. 17, p. 31 *citing Gilliam v. State*, 331 Md. 651, 686 (1993). The court continued: "*Bowers v. State*, 320 Md. 416, 436-37 (1990), however, does allow for cumulative effect of related claims to establish ineffective assistance where numerous interrelated errors, taken together resulted in inadequate representation. . . . .In the case *sub judice*, a few of Mr. Jackson's allegations may prove ineffective assistance of counsel as to the performance component. As such, it is necessary to consider the cumulative effect of the prejudice prong." *Id*. at Ex. 17, p. 31-32. The court, nevertheless, concluded that the cumulative effect was not strong enough to constitute prejudice.

As the Fourth Circuit has held, "ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively." *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998), *cert. denied*, 119 S.Ct. 1290 (1999). Petitioner's argument that *Fisher* is reversed by the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000), is unpersuasive in this case. Paper No. 10 at pp. 3–5. The decision in *Williams* concerned numerous failures by defense counsel to bring to light mitigating factors in the penalty phase of a death penalty case. *Williams*, 529 U.S. at 370. In reversing the Fourth Circuit's holding that the state court had not erred in its analysis, the Supreme Court noted that "the State Supreme Court's prejudice determination was unreasonable insofar as it failed to evaluate the totality of the available mitigation evidence--both that adduced at trial, and the evidence adduced in the habeas proceeding in reweighing it against the evidence in aggravation." *Id*. at 398.

A similar argument, that *Williams* overruled Fourth Circuit precedent, was rejected in *Lenz v. True*, 370 F.Supp.2d 446 (2005), 489-90 (W.D.Va. 2005):

> Lenz claims that counsel's failures individually and cumulatively prejudiced him. The Supreme Court of Virginia addressed this claim in its state habeas rehearing

opinion. [*Lenz v. Warden of the Sussex I State Prison*, 267 Va. 318, 593 S.E.2d 292 (2004)] *Lenz III*, 593 S.E.2d at 305. The court held that "[h]aving rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." *Id.* (citing *Mueller v. Angelone*, 181 F.3d 557, 586 n. 22 (4th Cir.1999); *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir.1998)). Lenz argues that the state court determination is contrary to *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), because *Williams* overruled the cases upon which the state court relied.

   Lenz's argument has no merit. *Williams* does not stand for the proposition that several ineffective assistance of counsel claims, none of which constituted deficient performance or prejudice, can collective prejudice a defendant. *See Williams*, 529 U.S. at 395, 120 S.Ct. 1495 (finding that counsel's performance was unreasonable). Furthermore, *Williams* did not "effectively overrule" the Fourth Circuit's decisions in *Mueller* and *Fisher*. (See Pet. at 117.) Those cases remained good law after *Williams* and continue to be cited in the Fourth Circuit today. *See, e.g., United States v. Russell*, 34 Fed.Appx. 927, 927, 2002 WL 1011530 (4th Cir.2002) (unreported) (explaining its holding in *Fisher* that "it is not appropriate to consider the cumulative effect of attorney error when the individual claims of ineffective assistance do not violate the defendant's constitutional rights"); *Leary v. Garraghty*, 155 F.Supp.2d 568, 577 (E.D.Va.2001) (explaining the Fourth Circuit's *Fisher* holding "that ineffective assistance of counsel claims ... must be reviewed individually, rather than collectively").

   Finally, the Supreme Court of Virginia's determination that a series of reasonable actions by Lenz's counsel could not cumulatively prejudice him was proper. Simply put, there was nothing to cumulate in Lenz's case. This principle has been repeated several times since *Williams*. *See Russell*, 34 Fed.Appx. at 928, 2002 WL 1011530, *1 (citing *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir.1998) (holding "cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors")); *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir.2002) ("a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test"); *Hough v. Anderson*, 272 F.3d 878, 907 n. 14 (7th Cir.2001) ("if there are no errors or a single error, there can be no cumulative error"). The Supreme Court of Virginia's adjudication of this claim was reasonable under *Williams*.

In *Russell*, the court found that *Fisher* did not apply when the district court assumed error, but rejected the claim of ineffective assistance because the court found no prejudice. Thus, the cases teach that there can be no cumulative effect of "non-errors," but a court must assess cumulative effect of errors relating to a single issue to determine whether a petitioner has shown prejudice.

18

In this case, the post-conviction court indeed applied that analysis to all of the asserted errors of counsel. As to the two errors raised here, the state court reasonably found no error in failing to object to the refusal to reinstruct and no prejudice from the failure to object to the second degree rape force instruction. Thus, there was no cumulative prejudice arising from multiple attorney errors.

## **Conclusion**

Petitioner has set forth no grounds upon which relief may be granted by this court and he cannot meet the burden imposed by 28 U.S.C. § 2254(d). The post conviction court thoroughly considered each of his asserted claims and rejected each through sound legal reasoning and reasonable application of well established law. Mr. Jackson cannot show that his trial counsel's performance was constitutionally deficient, nor can he establish that any alleged deficiency in either trial counsel's performance or in the trial itself so prejudiced his cause that a different result would have occurred but for that deficiency. Accordingly, the Petition shall be dismissed with prejudice. A separate Order follows.

__3/27/06_____                      _____/s/_____
Date                                    DEBORAH K. CHASANOW
                                        United States District Judge